# In the United States Court of Federal Claims
BID PROTEST

|  |  |  |
|---|---|---|
| EASTERN SHIPBUILDING GROUP, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 22-1571C |
| THE UNITED STATES OF AMERICA, | ) | (Filed: June 12, 2023) |
| Defendant, | ) | |
| and | ) | |
| AUSTAL USA, LLC, | ) | |
| Defendant-Intervenor. | ) | |

Jonathan D. Shaffer, Haynes and Boone, LLP, Tysons Corner, Virginia, for Plaintiff. Daniel H. Ramish, Haynes and Boone, LLP, Of Counsel.

Eric E. Laufgraben, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Bryan M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Douglas K. Mickle, Assistant Director, for Defendant. Julia A. Lobosco, Attorney, U.S. Coast Guard, Washington, DC, Of Counsel.

Seth H. Locke, Perkins Coie LLP, Washington, DC, with whom were Alexander O. Canizares, Julia M. Fox, and Brenna D. Duncan, for Defendant-Intervenor.

**OPINION AND ORDER**[*]

Currently before the Court in this post-award bid protest is the motion of Eastern Shipbuilding Group ("ESG") to supplement the administrative record and for additional briefing. ECF No. 67. ESG requests that the Court add to the record: (1) a copy of an indictment recently handed down by a grand jury charging three former executives of intervenor Austal USA, LLC ("Austal") with wire fraud and related offenses, and (2) a copy of a civil complaint filed against

---

[*] This Opinion was originally issued under seal and the parties were given the opportunity to request redactions. The government and Plaintiff ESG propose redacting information relating to the slope of Austal USA LLC's ("Austal's") proposed learning curve. Austal proposes also redacting portions of the Opinion that reference its alleged failure to disclose in its proposal the existence of certain investigations and the fact that two of its former principals had been indicted. Austal would also have the Court redact references in its financial statements to certain subpoenas and a search warrant, which were issued by the Office of the Inspector General at the Department of Defense and the United States District Court for the Southern District of Alabama, respectively. See Def.'s Notice, ECF No. 73; Def.-Intervenor's Notice, ECF No. 74.

The court may restrict public access to records which contain "business information that might harm a litigant's competitive standing," Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). But that authority to shield parts of its Opinion from the public view is subject to the "strong presumption in favor of a common law right of public access to court proceedings." In re Violation of Rule 28(D), 635 F.3d 1352, 1356 (Fed. Cir. 2011).

Applying these standards, the Court agrees that information about the slope of Austal's proposed learning curve is proprietary and that its disclosure could harm Austal's competitive standing. Nixon, 435 U.S. at 598. Moreover, the information is not essential to the public's understanding of the opinion. See Bd. Of Regents of Nevada Sys. of Higher Educ. on behalf of Desert Rsch. Inst. v. United States, 2017 WL 2856416, at *2 (Fed. Cl. July 5, 2017) (allowing redactions where information did not "meaningfully contribute to, and its absence would not detract from, the comprehensibility of the opinion and could conceivably aid intervenor's competitors.").

On the other hand, the Court rejects Austal's request for the additional redactions noted above. These references (some of which are to matters that are already public) do not reveal proprietary business information. Further, their inclusion is necessary to understand the basis for the Court's denial of ESG's motion to supplement the record with a copy of the indictment against the former Austal executives and the civil complaint the Securities and Exchange Commission filed. The Court therefore accepts only the proposed redactions with respect to the learning curve.

2

those same former executives by the Securities and Exchange Commission. See Pl.'s Mot. Exs. 1–2, ECF Nos. 67-1–2. For the reasons set forth below, ESG's motion is **DENIED**.

## DISCUSSION

This case arises out of ESG's challenge to the United States Coast Guard's decision to award the Offshore Patrol Cutter 2 ("OPC 2") contract to Austal, one of its competitors. In its complaint and motion for judgment on the administrative record, ESG contends that the Coast Guard's evaluation of the competing proposals was flawed, unreasonable, and/or inconsistent with the evaluation criteria in numerous respects. See generally Pl.'s Mot. for J. on the Admin Record [hereinafter "Pl.'s MJAR"], ECF No. 46.

The Coast Guard issued the request for proposals for the OPC 2 contract on January 29, 2021. See AR Tab 1. After five rounds of written discussion questions, final proposal revisions were submitted on March 18, 2022. See id. Tab 24 at 21066. The Coast Guard then decided to award Austal the contract on June 27, 2022. See id. Tab 38. ESG timely protested the award to the Government Accountability Office but then withdrew that protest and filed the present action in this court on October 21, 2022. See Compl., ECF No. 1. The parties have since filed lengthy briefs in support of their cross motions for judgment on the administrative record.

The present motion to supplement is based on the allegations set forth in an indictment and SEC complaint that were filed some six weeks after the parties completed briefing. Specifically, on March 30, 2023, an Alabama grand jury indicted three former Austal executives: Craig D. Perciavalle, Joseph A. Runkel, and William O. Adams on charges of wire fraud and

related offenses.[1] The charges in the indictment arise out of fraudulent practices allegedly employed in connection with an earlier contract between Austal and the United States Navy involving the building of Littoral Combat Ships ("LCS"). See Pl.'s Mot. at 3. The SEC filed a civil complaint against the three defendants the next day, alleging that the same fraudulent practices described in the indictment constituted securities fraud under 15 U.S.C. § 78j(b). See id.

The indictment and civil complaint charge that during the period between 2013 and 2016, the three former Austal executives employed a scheme to artificially lower the estimated costs of building the LCS that it reported to stockholders and investors. The purpose of the scheme was to enable Austal to meet its financial projections and reflect higher revenues and earnings. See id. at 3–4.

ESG argues that the indictment and complaint should be admitted into the record because they constitute "probative evidence corroborating ESG's [] arguments and contradicting those of the Government and Austal." See id. at 6. For example, according to ESG, the allegations in the indictment and complaint support its argument that Austal's OPC 2 proposal reflected "a faulty learning curve based on unrealistic and unreasonably suppressed labor hours for the OPC 2 program." See id. at 7. Specifically, it notes that in evaluating Austal's OPC 2 proposal, the Navy observed that the [* * *] learning curve Austal employed to estimate its costs "[* * *]," and that the "[* * *] learning curve" that the SEC identified as being part of the scheme to

---

[1] Craig D. Perciavalle served as President of Austal. See Pl.'s Mot. at 3. Joseph A. Runkel served as director of financial analysis. See id. William Adams served as director of Austal's LCS program. See id.

understate Austal's estimated costs in the LCS contract, is "[* * *] Austal now proposes for the OPC 2." Id. at 7–8.

Both the government and the intervenor take issue with ESG's contentions that the indictment and SEC complaint—which arise out of actions taken under another contract some six years before the Coast Guard awarded the OPC 2 contract—corroborate any of ESG's protest grounds. Regarding Austal's application of a [* * *] learning curve for the cost estimates in its proposal, for example, the government observes that Austal "relied on 'actual data' generated from years of experience on multiple contracts as well as a subject-matter expert—not LCS completion estimates reported to investors between 2013 and 2016." Def.'s Resp. at 6, ECF No. 68 (citing AR Tab 33 at41482); see also Def.-Intervenor's Resp. at 8, ECF No. 69 (making same point). Further, it notes, "the SEC complaint alleges that Austal reported 'more accurate [estimates] to the Navy,' even if Austal allegedly reported lower ones to investors." Def.'s Resp. at 6 (citing Pl.'s Mot. Ex. 2, at ¶¶ 86–87); see also Def.-Intervenor's Resp. at 7 (explaining that the allegations in the SEC complaint concern statements made to investors, not to the government, and not in connection with the OPC 2 procurement).

The Court finds it unnecessary to decide whether the allegations in the indictment and SEC complaint support ESG's challenges to the Coast Guard's evaluation of the competing proposals because the "focal point" of the Court's review of an agency's procurement decision "should be the administrative record already in existence, not some new record initially made in the reviewing court." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). "[L]imiting review to the record actually before the agency" helps courts guard against "using new evidence to 'convert the 'arbitrary and capricious' standard'" applicable to bid protest actions "'into effectively de novo

review.'" Id. at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (Fed. Cl. 2000)). Accordingly, the court should not allow supplementation of the administrative record unless "'the omission of extra-record evidence precludes effective judicial review'" of the agency's decision. Id. (quoting Murakami, 46 Fed. Cl. at 735).

ESG's focus on whether the allegations in the indictment and SEC complaint "corroborate" its challenges to the Coast Guard's evaluation of the competing proposals is therefore misguided. ESG conflates two questions that Axiom requires be kept distinct: (1) whether the information in the indictment and SEC complaint might have supported ESG's arguments had it been before the agency at the time the proposals were evaluated; and (2) whether effective judicial review of the Coast Guard's procurement decision would be precluded without this Court considering that information now. The Court expresses no opinion about the first question, i.e. whether the indictment and/or complaint provided support for ESG's critiques of the agency's evaluation of the competing proposals because, even if they did, it would not provide a basis for supplementing the administrative record. See Second St. Holdings LLC v. United States, 162 Fed. Cl. 306, 331 (2022) (denying motion to supplement record with evidence merely because it might "bolster[]" or "corroborate[]" a party's arguments). Indeed, if the rule were otherwise, then there would be no end to procurement disputes as protestors would be able to endlessly request that the court consider additional recently discovered evidence in support of their contentions.

For similar reasons, ESG's argument that the indictment of the three former Austal executives or the SEC complaint, "illustrate" or "underscore" that the Coast Guard's responsibility determination was based on an inadequate inquiry and incomplete analysis, is also unavailing. See Pl.'s Mot. at 9. "[P]ost-award events are not determinative of whether [an

6

agency's] pre-award evaluation of then-present responsibility, based on the available information before the CO at that time, was arbitrary and capricious." Second St. Holdings, 162 Fed. Cl. at 330–31; see also Emerald Coast Finest Produce Co. v. United States, 76 Fed. Cl. 445, 450 (2007) (post-award declarations addressing matters that occurred after contract award found to be irrelevant to the court's review of the CO's pre-award responsibility determination).

Finally, in its motion to supplement, ESG argues that the indictment and SEC complaint "also corroborate ESG's argument that Austal made material misrepresentations in its OPC 2 proposal." Pl. Mot. at 10. It notes that "[t]he FAR required Austal to disclose that its principals had been charged with securities fraud and making false statements." Id. In addition, ESG alleges in its reply brief, Austal made a material representation when it "said nothing [in its proposal] about any SEC or DOJ investigations." Pl.'s Reply at 8, ECF No. 70.

To be sure, supplementation of the administrative record is often necessary in cases in which a protester alleges that the awardee made a material misrepresentation in its proposal. The essence of such a misrepresentation, after all, is the falsity of the information that an offeror submitted to the agency and the agency's reliance on that false information. As such, one would hardly expect the record before the agency to contain evidence sufficient to determine whether a misrepresentation has occurred. See Golden IT, LLC v. United States, 157 Fed. Cl. 680, 688 (2022) (claim of misrepresentation "necessitates this Court's consideration of evidence that is not contained in the administrative record and, indeed, that no one could reasonably expect to be contained in the administrative record").

But to justify its admission, the supplemental information must at least be relevant to whether the proposal contains a material misrepresentation. ESG never explains how Austal could have disclosed in its proposal a complaint or indictment that came more than a year after

the OPC 2 contract was awarded. Nor does it explain how the information included in the indictment and complaint bears on the fulsomeness of the disclosures Austal provided with its proposal, which, the Court notes, included financial statements that revealed that Austal's financial practices had been and might still be under investigation by the United States.[2]

In short, effective review of ESG's misrepresentation claim does not require consideration of the indictment or the SEC complaint. Instead, that claim will be reviewed on the basis of the administrative record before the agency, just as it was argued in the briefs on the parties' cross motions for judgment on the administrative record.

---

[2] Austal submitted financial statements with its proposal in which it disclosed the fact that it had received two subpoenas from the Office of the Inspector General of the Department of Defense and a search warrant from United States District Court for Southern District of Alabama in 2019. The subpoenas and search warrant covered "a variety of financial and operational information" that related to, among other things "certain ship components purchased from one of its suppliers for use in connection with U.S. Government contracts, charging and allocation of labor hours, and the write-back of work-in-progress that was announced by Austal Limited on July 4, 2016." AR-39.2 at 41808, 41848. Austal further acknowledged that—although it did not know where the investigations would lead—"depending upon the outcome of this matter, the Company could be subject to civil and criminal penalties, damages, and/or suspension or debarment from future U.S. Government contracts." Id; see also AR Tab 26c-10b at 39697 (financial statement disclosing "ongoing investigation by Navy Investigative agencies" but noting that "[t]here are no allegations that have been communicated to Austal USA LLC by the investigating agencies.").

## CONCLUSION

On the basis of the foregoing, ESG's motion to supplement the record and for additional briefing, ECF No. 67, is **DENIED**.[3]

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge

---

[3] ESG also attached two earnings call transcripts to its reply as exhibits. See Pl.'s Reply Ex. 1, ECF No. 70-1. As these transcripts are not part of the record, the Court will not consider their contents. If ESG intended to request that the Court supplement the record with those transcripts, that request is **DENIED**.